# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Judy Hutar, | Civil No. 15-2100 (MJD/JJK) |
| Plaintiff, | |
| v. | |
| Capital One Financial Corporation, d/b/a, Capital One; Fifth Third Bank, Wells Fargo Bank, N.A., Inc., d/b/a Wells Fargo Dealer Services; JP Morgan Chase Bank; Regional Acceptance Corporation; City & County Credit Union; Exeter Finance Corp.; and Wilcox Automotive, LLC; | REPORT AND RECOMMENDATION |
| Defendants. | |

Thomas J. Lyons, Jr., Esq., Consumer Justice Center, counsel for Plaintiff.

Shawn M. Raiter, Esq., Larson King, LLP, counsel for Defendants Fifth Third Bank, City & County Credit Union, Exeter Finance Corp., and Regional Acceptance Corporation; Jessica A. Savran, Esq., Faegre Baker Daniels LLP, counsel for Defendant Wells Fargo Bank N.A.; Matthew O. Stromquist, Esq., Pilgrim Christakis LLP, counsel for Capital One Finance Corp.; Uzodima F. Aba-Onu, Esq., Bassford Remele, counsel for JPMorgan Chase Bank; and Gregory J. Johnson, Esq., G Johnson Law, PLLP, counsel for Wilcox Automotive.

JEFFREY J. KEYES, United States Magistrate Judge

## I. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Judy Hutar, the plaintiff in this case, purchased a car from Wilcox Automotive, an automobile dealership. When Hutar was at the dealership, she discussed financing a portion of the vehicle's purchase price with a Wilcox

representative.  She alleges that she gave Wilcox instructions that she wanted only two financial institutions to pull her credit report, Americredit and Ally Financial.  However, according to the initial Complaint, Wilcox sent her credit application to several other financial institutions, which then viewed her credit report.[1]  As a result of these events, Hutar claims that Wilcox breached their agreement by submitting her credit application to several potential lenders whom she did not specifically identify.  She also claims that several of the financial institutions to which Wilcox sent her credit application violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b(f), which prohibits certain uses of a consumer's credit report.  Finally, Hutar asserts that Wilcox invaded her privacy by sharing her private credit report information with third parties she did not authorize to receive it, and she claims that the financial institutions, who impermissibly received her credit application and then viewed her credit report, invaded her privacy by intruding upon her right to seclusion.  (*See* Doc. No. 1, Compl., *passim.*)

Several of the financial institutions against whom Hutar asserts her FCRA and invasion-of-privacy claims, including Wells Fargo Bank N.A., Fifth Third Bank, JPMorgan Chase Bank, City & County Credit Union, and Capital One

---

[1] Hutar did receive financing for the purchase of a used car from Americredit, finished the transaction with Wilcox, took possession of the vehicle, and drove it away from the dealership.  However, she later returned the vehicle to Wilcox, and Wilcox cancelled the transaction, rescinded the agreement, and returned Hutar's trade-in.  (Doc. No. 1, Compl. ¶¶ 26–29.)

(collectively "the moving defendants"), now ask the Court to dismiss this case on grounds that Hutar has failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 33 (Mot. to Dismiss by City & County Credit Union, Fifth Third Bank, JPMorgan Chase Bank, and Wells Fargo Bank N.A.; Doc. No. 40 (Mot. to Dismiss by Capital One)).) The moving defendants contend that the allegations in the Complaint fail to plausibly show that they lacked a permissible purpose to obtain Hutar's credit report or that they engaged in any conduct that could make them liable for an invasion of privacy. (Doc. No. 35, Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' MTD Mem.") 6-16; Doc. No. 42, Def. Capital One's Mem. in Supp. of Mot. to Dismiss ("Capital One's MTD Mem.") 4-14.) With respect to the FCRA claim, the moving defendants essentially contend that Hutar failed to plead any facts that would suggest they knew or had a reason to know that Wilcox was not authorized to send them Hutar's credit information. Thus, when they pulled her credit report to determine whether they would extend Hutar financing for the vehicle she was purchasing from Wilcox, they argue that they did not engage in any conduct prohibited by the FCRA. By the same rationale—that they did nothing improper in obtaining her credit report—the moving defendants contend that they could not have violated Hutar's privacy rights under Minnesota law. Finally, they contend that Hutar failed to state a claim for invasion of privacy because merely obtaining her credit report is an insufficient basis, as a matter of law, to constitute conduct that is highly offensive

to a reasonable person. (Defs.' MTD Mem. 6-16; Capital One's MTD Mem. 4-14.)

Hutar did not file any memorandum in response to the moving defendants' Rule 12(b)(6) motions. Instead, she responded to the motions to dismiss by filing a motion to amend her complaint along with a proposed amended pleading. (Doc. No. 57, Pl.'s Mot. to Am.; Doc. No. 60, Decl. of Thomas J. Lyons Jr. ("Lyons Decl.") ¶ 2, Pl.'s Proposed Am. Compl.).) To save her FCRA and invasion-of-privacy claims against the moving defendants, Hutar makes the following additional factual allegations in her Proposed Amended Complaint. She alleges that Wilcox "has an agreement in place with all the lenders it works with that specifically states what disclosures and authorizations are required by law before lenders can legally access a consumer's credit report in connection with the financing of an automobile." (Proposed Am. Compl. ¶ 13.) Such "Dealer Agreements" require Wilcox to provide a warranty to the potential lenders that it is in compliance with all applicable laws and regulations, including the FCRA. (*Id.* ¶ 14.) Further, Wilcox uses an online software program, such as DealerTrack, to communicate with and send documents to the moving defendants. (*Id.* ¶ 15.) DealerTrack provides an online processing system that car dealerships use to submit customers' credit applications to financing sources, like the moving defendants, for automobile financing. (*Id.*) Hutar claims that these facts demonstrate that Wilcox acted as the moving defendants' agent. (*Id.*

¶¶ 16–17; Doc. No. 59, Pl.'s Mem. in Supp. of Mot. for Leave to File Am. Compl. ("Pl.'s Mem.") 7.)

In addition, Hutar alleges in her Proposed Amended Complaint that since she filed this case, she received a copy of a DealerTrack Credit Application from Capital One, which Hutar had signed, authorizing Capital One to pull her credit report. (Proposed Am. Compl. ¶ 46.) Wilcox provides this DealerTrack document to lenders to purportedly authorize them to pull a consumer's credit reports in connection with the financing of new or used automobiles. (*Id.* ¶ 48.) Near the bottom of the document it reads: "This application may be submitted to the following financial institutions[,]" but the space following that wording is left blank. (*Id.*) Capital One, and the other moving defendants, allegedly received this credit application, with the blank space, from Wilcox. (*Id.* ¶¶ 46, 51.) Hutar contends that, given the blank space on the DealerTrack Credit Application, none of the moving defendants received "the requisite authorization to pull Plaintiff Hutar's credit report." (*Id.* ¶ 52; Pl.'s Mem. 7-8 (arguing that this is the document Wilcox sends "to the lenders for which it works, granting such lenders the authorization they need from the consumer[s] . . . to legally access their personal credit information in connection with the financing of a new or used automobile").)

The moving defendants, Exeter Finance Corporation, and Wilcox oppose Hutar's motion to amend. (Doc. No. 66, Defs.' Mem. in Opp'n to Pl's Mot. to Am. ("Defs.' Opp'n"); Doc. No. 72, Def. Wilcox's Opp'n to Pl.'s Mot. to Am. ("Wilcox Opp'n").) They insist that Hutar's proposed amendment is futile because, even if

5

the new factual allegations in the Proposed Amended Complaint are accepted as true, Hutar still fails to state a claim against the moving defendants for: (1) violation of the FCRA because there are no allegations showing that the moving defendants knew or had any reason to know that she had not authorized them to pull her credit report; or (2) an invasion-of-privacy tort because there are no allegations that any moving defendant pulled her credit report wrongfully or otherwise engaged in conduct that would be highly offensive to a reasonable person.  (Defs.' Opp'n 2–5, 7–8; Wilcox Opp'n 6–11.)

## II. DISCUSSION

### A. Posture of the Pending Motions and Legal Standards

As noted above, after the moving defendants filed their motions to dismiss on the grounds that the initial Complaint failed to state a claim for either Hutar's FCRA or invasion-of-privacy claims, Hutar sought leave to file an amended complaint rather than opposing the motions and saying she pled her claims sufficiently at the commencement of this case.  In her motion to amend and supporting memorandum, Hutar raised no argument that her initial pleading was sufficient to overcome the dismissal motions.  And at the hearing on the motions to dismiss and Hutar's motion to amend, Hutar's counsel indicated that if the motion to amend was unsuccessful, then it would be appropriate to grant the moving defendants' motions to dismiss.  Thus, Hutar concedes that her initial Complaint failed to state a claim against the moving defendants for any FCRA violation or invasion-of-privacy tort.

Given Hutar's apparent concession that her original pleading was insufficient, and that the moving defendants' challenge to Hutar's proposed amendment is based on its alleged futility, this Court will recommend that the pending motions to dismiss the initial complaint be granted and Hutar's motion to amend be denied because, as explained below, the Proposed Amended Complaint fails to state a claim for which relief can be granted against the moving defendants under the FCRA or for an invasion of privacy.[2] A proposed amendment is futile where the proposed amended complaint cannot withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Cornelia I. Croswell GST Trust v. Possis Medical, Inc.*, 519 F.3d 778, 782 (8th Cir. 2008); *Selmer v. Wilms*, No. 13–cv–3283 (JNE/LIB), 2014 WL 3845779, at *2 (D. Minn. Aug. 5, 2014) (stating that "a party may successfully challenge a motion to amend pleadings on grounds of futility if the claims created by the amendment would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted").

To survive a Rule 12(b)(6) motion to dismiss, for failure to state a claim upon which relief can be granted, a pleading must contain "enough facts to state

---

[2] This Court addresses the motion to amend in this Report and Recommendation rather than in a separate order in light of the posture in which these motions are before the Court and the fact that a district court's review of a magistrate judge's denial of a motion to amend on futility grounds is de novo. *See Magee v. Trustees of the Hamline Univ., Minn.*, 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013), *aff'd sub nom. Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532 (8th Cir. 2014).

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). When evaluating a motion to dismiss, the Court assumes the facts in the pleading to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions a plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

    **B.   Analysis**

        **1.   Fair Credit Reporting Act Claim**

In her Proposed Amended Complaint, Hutar asserts that the moving defendants violated the FCRA by accessing her credit report without a permissible purpose. (Proposed Am. Compl. ¶ 57.) Under the FCRA, it is unlawful for a person to use or obtain a consumer report for any purpose unless the report is obtained for a permissible purpose. 15 U.S.C. § 1681b(a) (stating that "any consumer reporting agency may furnish a consumer report under the following circumstances and no other" and listing permissible purposes for

8

furnishing such a report); 15 U.S.C. § 1681b(f)(1) ("A person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section"). Permissible purposes for accessing a credit report include, but are not limited to, a person seeking a credit report where the person "intends to use the information in connection with a credit transaction . . . involving the extension of credit to . . . the consumer." 15 U.S.C. § 1681b(a)(3)(A). "Whether a permissible purpose existed is a question of law." *Breese v. TRIADvantage Credit Servs., Inc.*, 393 F. Supp. 2d 819, 821 (D. Minn. 2005). If "a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA.'" *Miller v. Rubin & Rothman, LLC*, No. 10-cv-2198 (MJD/JJK), 2011 WL 4359977, at *3 (D. Minn. Sept. 19, 2011) (quoting *Korotki v. Attorney services Corp., Inc.*, 931 F. Supp. 1269, 1276 (D. Md. 1996)). There can be no FCRA violation if the entity that accesses a credit report "has a good faith belief that it had a permissible purpose" to access the report. *Eaton v. Central Portfolio Control, Inc.*, No. 14-cv-747 (DSD/FLN), 2014 WL 6982807, at *1 (D. Minn. Dec. 9, 2014).

### a. The moving defendants' lack of knowledge

Even accepting as true the factual allegations in the Proposed Amended Complaint, Hutar has failed to state an FCRA claim against the moving defendants. The allegations in the Proposed Amended Complaint lead to the inference that each of the moving defendants obtained Hutar's credit report as a

9

result of the fact that she had sought credit for the purchase of an automobile. Given that Hutar was seeking credit at Wilcox to finance a portion of the vehicle's purchase price, the only plausible inference to draw from the proposed amended pleading is that the moving defendants intended to use the information from her credit report in connection with a credit transaction involving Hutar and involving the possible extension of credit to her. *See* 15 U.S.C. § 1681b(a)(3)(A). This would be a permissible purpose for the moving defendants to access her credit report under the FCRA.

To overcome that inference, Hutar would need to allege facts showing that the moving defendants could not have believed, in good faith, that Hutar had authorized the lenders to obtain her credit report. She attempts to do so by alleging that she never specifically authorized any of the moving defendants to obtain her credit report and only authorized Wilcox to send her credit application to two possible sources of financing: Americredit and Ally Financial. But Hutar did not originally allege (and does not do so now) that any of the moving defendants actually knew or had any reason to know that Hutar told a Wilcox employee that she only wanted Americredit and Ally Financial to view her credit report. She does not, for example, allege that Wilcox passed that information on to any of the moving defendants.

Instead, Hutar alleges that Wilcox provided each of the moving defendants with her DealerTrack Credit Application form, which contains a blank space where the name of a financial institution that had authorization to pull a

10

consumer's credit report could have been, but was not, included.  (Proposed Am. Compl. ¶¶ 48–51; *id.*, Ex. 3 (DealerTrack Credit application).)  The moving defendants dispute that they actually received the DealerTrack Credit Application, submitting declaration testimony that contradicts Hutar's allegations.  (*Compare* Doc. No. 70, Decl. of Thomas Coulter ¶ 9 (asserting that City & County Credit Union did not receive the DealerTrack Credit Application before it received and processed Hutar's electronic credit application, *with* Proposed Am. Compl. ¶ 51 (alleging that "all the Defendant lenders in this case received the DealerTrack Credit Application from Defendant Wilcox and relied on it when pulling Plaintiff Hutar's credit report").)  Because the Court is evaluating whether the proposed amendment is futile, the Court must accept as true the facts alleged in the Proposed Amended Complaint.  Therefore, the moving defendants' reliance on *Olson v. Kambiri*, No. 13-cv-1777 (DWF/LIB), 2014 WL 2858164, at *12 (D. Minn. June 18, 2014), to support its argument that the Court may consider their contradictory declarations is misplaced.  In *Olson*, the court concluded that the plaintiff's proposed amendment of his claims was futile because his allegations were "contradicted by the public record."  *Id.*  In doing so, the court was taking judicial notice of facts that can be reviewed in evaluating a motion to dismiss.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (including matters of public record as those the court may consider in deciding a motion to dismiss).  It was not resolving a dispute between the plaintiff's allegations in a proposed amended pleading and contradictory

evidentiary material submitted by the defendant, which is what the moving defendants ask the Court to do here. To determine that a proposed amendment failed to state a claim because the defendant submitted a contradictory affidavit would be to resolve a factual dispute at the pleadings stage by looking at matters outside the complaint. The Court can only do that if it converts the motion to one for summary judgment. Fed. R. Civ. P. 12(d) ("If on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Accordingly, the Court rejects the moving defendants' invitation to decide that the allegations in the Proposed Amended Complaint are implausible because they "contradict the actual evidence." (Doc. No. 66, Defs.' Opp'n at 6.) Instead, the Court analyzes the sufficiency of Hutar's Proposed Amended Complaint accepting her factual allegations as true. The Court has not, however, accepted as true Hutar's allegations in the Proposed Amended Complaint that "[t]he DealerTrack Credit Application did not provide any of the Defendant Lenders with the requisite authorization to pull Plaintiff Hutar's credit report." (Proposed Am. Compl. ¶ 52.) The Court is not required to accept as true such legal conclusions a plaintiff draws from the facts pled. *Westcott*, 901 F.2d at 1488.

Even accepting only the additional factual allegations regarding the DealerTrack Credit Application as true, the Proposed Amended Complaint fails to state any plausible FCRA claim. Hutar's allegations show that each of the moving defendants, which are financial institutions in the business of extending

12

credit to consumers, received a credit application document bearing the plaintiff's signature in connection with an attempt to procure financing for the purchase of an automobile. As a result, each moving defendant obtained her credit report to determine whether it would extend her credit. Under these circumstances, the moving defendants would still have had a good faith belief that they were authorized to pull the identified consumer's credit report because Hutar initiated a credit transaction, and the allegations show that the moving defendants pulled her credit report as part of that transaction. The new allegations about the blank space on the credit application form do not change the fact that Hutar has not pled that the moving defendants knew or should have known that Hutar told Wilcox that she only wanted two specific lenders to receive her credit application. The only plausible inferences to draw from the allegations are, first, that the moving defendants had a good faith basis to believe that Hutar authorized the credit check, and second, that the moving defendants intended to use her credit report in connection with Hutar's application for financing. *Cf. Wells v. Craig Landreth Cars, Inc.*, 474 Fed. App'x 445, 446–47 (6th Cir. Apr. 4, 2014) (granting financial institution's motion to dismiss where plaintiff alleged that she did not apply for credit with automotive dealer and dealer nevertheless submitted an application on her behalf to the financial institution because there was no allegation that showed the financial institution should have known that the consumer did not want the dealership to file an application for her); *Stergiopoulos & Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005)

(affirming summary judgment for financial institution where the consumers' credit application failed to specifically mention that the defendant, or other unidentified third-party lenders, could review the consumers' credit reports).

        b.  **Whether Wilcox was the moving defendants' agent**

Hutar also attempts to allege an FCRA claim against the moving defendants by claiming that Wilcox is an agent of each moving defendant. (Proposed Am. Compl. ¶¶ 12, 16–17; Pl.'s Mem. 7.) Hutar thus appears to argue that if Wilcox is an agent of the moving defendants, and Wilcox knew that Hutar only authorized her credit application to be sent to Americredit and Ally Financial, then Wilcox's knowledge that the moving defendants were not authorized to pull her credit report can be imputed to the moving defendants as Wilcox's principals. *Cf. Shepherd-Salgado v. Tyndall Federal Credit Union*, No. 11-cv-427-WS-B, 2011 WL 5401993, at *5 n.8 (S.D. Ala. Nov. 7, 2011) (indicating that the plaintiff could not attribute the alleged wrongdoing of a non-party to the lender defendants "absent allegations of agency, complicity, or conspiracy, which [had] not been advanced"); *Enoch v. Dahle/Meyer Imports L.L.C.*, No. 2:05-cv-409, 2009 WL 499544, at *4 (D. Utah Feb. 27, 2009) (explaining that the plaintiff could not survive summary judgment on an FCRA claim where there was no evidence that the lender defendants had knowledge of alleged misrepresentations made by the dealer and the plaintiff did not establish "any agency relationship between [the dealer] and the [lender] Defendants [such that] the Defendants cannot be held responsible for any alleged misdeeds by the [dealer]").

None of the parties indicate whether the Court should apply Minnesota law, the federal common law of agency, or some other body of law, to determine whether Hutar has adequately pled that there is a principal-agent relationship between Wilcox and the moving defendants for purposes of her FCRA claim. In considering whether an employer automobile dealership could be held liable for the allegedly unlawful acts of its employee in violation of the Fair Credit Reporting Act, at least one court has observed that "[t]o promote uniformity in the application of agency principles to the FCRA, we rely generally on the general common law of agency as opposed to the law of any particular state." *Del Amora v. Metro Ford Sales and Service, Inc.*, 206 F. Supp. 2d 947, 951 (N.D. Ill. 2002). "[F]ederal courts have adopted the Restatement of Agency in establishing federal common law[.]" *Id.* Under the Restatement (Second) of Agency, "[a]n agency relation exists only if there has been a manifestation by the principal to the agent that the agency may act on his account, and consent by the agent so to act." Restatement (Second) of Agency § 15 (1958). Further, "[a] principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Id.* § 14. The Court notes that these elements are fairly consistent with the requirements for showing the existence of an agency relationship under Minnesota law.³

---

3      Under Minnesota law, to establish that an agency relationship exists, a plaintiff must show: (1) manifestation of consent by the principal; (2) acquiescence by the agent; and (3) control exerted by the principal over the

(Footnote Continued on Following Page)

The agency-related factual allegations in the Proposed Amended Complaint are as follows.[4] Hutar asserts that Wilcox has a dealer agreement with all the lenders to which it sends credit applications. (Proposed Am. Compl. ¶ 13.) Such dealer agreements typically require a dealership to "*warrant* that it will comply with all applicable federal, state, and local laws, rules and regulations." (*Id.* ¶ 14 (emphasis in original).) Wilcox uses online software, such as DealerTrack, "to communicate with and send documents to the [moving defendants]. DealerTrack . . . is a credit application processing system that car dealerships use to submit customer credit applications to finance sources for automobile financing." (*Id.* ¶ 15.) Accepting these allegations as true, and based on the Proposed Amended Complaint as a whole, the Court concludes that Hutar has failed to plausibly allege that any agency relationship exists between Wilcox and the moving defendants. At most, her proposed amended pleading alleges

---

(Footnote Continued from Previous Page)
agent." *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 872–73 (D. Minn. 2012).

[4]   As the moving defendants did in their opposition to Hutar's motion to amend, Wilcox submitted an affidavit indicating that Hutar's allegation of agency "is not accurate" and that certain agreements between Wilcox and the moving defendants "state the exact opposite." (Doc. No. 73, Aff. of Ryan Benning ¶ 5.) For the same reasons the Court declined to consider the moving defendants' evidentiary submissions contradicting the allegations in the Proposed Amended Complaint concerning their receipt of the DealerTrack Credit Application, *see* discussion, *supra*, at 11–12, the Court will not consider Wilcox's contradictory affidavit in determining whether the amendment is futile. Similarly, the Court does not accept as true Hutar's legal conclusions that Wilcox is the agent of the moving defendants. (Proposed Am. Compl. ¶¶ 12, 16–17.)

that Wilcox and the moving defendants have business agreement indicating that Wilcox is in compliance with applicable consumer credit laws, that Wilcox's relationship with the lenders involves Wilcox sending credit applications to the lenders for the lenders' consideration, and that the parties facilitate this relationship using online software. Under any applicable standard, these allegations fail to show the existence of an agency relationship between Wilcox and the moving defendants. These allegations do not show that the moving defendants manifested assent for Wilcox to act on their behalf. Nor do they show that Wilcox acquiesced or consented to do so. And the allegations in the Proposed Amended Complaint do not show that any moving defendant controlled Wilcox's conduct.

For these reasons, the Court recommends that the moving defendants' motions to dismiss the FCRA claims be granted, and Hutar's motion to amend to add such allegations to her FCRA claim be denied.

### 2. Intrusion-Upon-Seclusion Claim

In her Proposed Amended Complaint, Hutar asserts that the moving defendants "engaged in intentional and deliberate actions when they proceeded to obtain and use [her] credit report . . . without a permissible purpose"; that their "actions were highly offensive and intruded upon [her] privacy"; and that this conduct involved "an unreasonable intrusion upon [her] right to seclusion." (Proposed Am. Compl. ¶¶ 69–71.) Intrusion upon seclusion is actionable under Minnesota law when a person "intentionally intrudes, physically or otherwise

17

upon the solitude or seclusion of another or his private affairs or concerns, if the intrusion would be highly offensive to a reasonable person." *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998). The tort has three elements: "(a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. Ct. App. 2001). For the first element, "[a]n intrusion occurs when an actor 'believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.'" *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 876 (8th Cir. 2000) (quoting *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989). As for the second element, ordinarily, whether an action is "highly offensive" is considered a "question of fact" for the jury, and only becomes a question of law "if reasonable persons can draw only one conclusion from the evidence." *Swarthout*, 632 N.W.2d at 745. Even where information is obtained improperly, the acquisition of information may not be highly offensive "if the information could just as well have been obtained by proper means." *Phillips v. Grendahl*, 312 F.3d 357, 371 (8th Cir. 2002), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). "Simply accessing another's credit report in good faith . . . does not typically give rise to an intrusion upon seclusion claim." *Eaton*, 2014 WL 6982807, at *3 (citing *Phillips*, 312 F.3d at 373).

Hutar has failed to state a plausible intrusion-upon-seclusion claim against the moving defendants. Her claim against these defendants rests entirely on

their alleged violation of the FCRA. Above, this Court concluded that the Proposed Amended Complaint failed to adequately allege that the moving defendants lacked a permissible purpose in obtaining her credit report. Where a defendant has a permissible purpose, which the moving defendants had here, to obtain a credit report, dismissal of an intrusion-upon-seclusion claim is appropriate. *Eaton*, 2014 WL 6982807, at *3. Because the Proposed Amended Complaint is subject to dismissal for this reason, the Court need not reach the moving defendants' other arguments for dismissal of the intrusion-upon-seclusion claim.

## RECOMMENDATION

Based on the above, **IT IS HEREBY RECOMMENDED** that:

1. The motions to dismiss the Complaint against the moving defendants Wells Fargo, Fifth Third Bank, JPMorgan Chase Bank, City & County Credit Union, and Capital One (Doc. Nos. 33, 40) be **GRANTED**; and

2. The plaintiff's motion to amend (Doc. No. 57) be **DENIED**.

Date: July 27, 2015

                                                  s/ Jeffrey J. Keyes
                                                  JEFFREY J. KEYES
                                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.