**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Judy Hutar | Civil No. 15-2100 MJD/JJK |
|       Plaintiff, | |
| v. | |
| Capital One Financial Corporation, d/b/a Capital One, Fifth Third Bank, Wells Fargo Bank N.A., Inc., d/b/a Wells Fargo Dealer Services, JPMorgan Chase Bank, Regional Acceptance Corporation, City & County Credit Union, Exeter Finance Corporation and Wilcox Automotive, LLC, | **REPORT AND RECOMMENDATION ON CO-DEFENDANT MOTIONS FOR JUDGMENT ON THE PLEADINGS** |
|       Respondent. | |
| Exeter Finance Corp., | |
|       Cross-Claimant, | |
| v. | |
| Wilcox Automotive, LLC, | |
|       Cross-Defendant. | |

Steven R. Kluz, Esq., Stoel Rives LLP, counsel for Cross-Claimant Exeter Finance, Corp.

Gregory J. Johnson, Esq., G Johnson Law PLLC, counsel for Cross-Defendant Wilcox Automotive, LLC.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on cross-motions for Judgment on the Pleadings by co-defendants Exeter Finance Corp. ("Exeter") and Wilcox Automotive, LLC ("Wilcox"). The underlying action under the Fair Credit Reporting Act ("FCRA") by Plaintiff Judy Hutar has been resolved. Exeter is now seeking indemnification from Wilcox for attorney's fees expended by Exeter in its defense in the main action. The District Court referred these motions to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends that Exeter's motion (Doc. No. 83) be **GRANTED**, that Wilcox's motion (Doc. No. 91) be **DENIED**, and that Wilcox be ordered to pay cross-claimant Exeter $7,145.50 in attorney's fees.

I.  BACKGROUND

This case stems from Plaintiff Judy Hutar's purchase of a car from Wilcox, an automobile dealership, and the alleged distribution of Hutar's credit application to financial institutions, including Exeter. When Hutar discussed options for purchasing the vehicle with Wilcox's finance department, Wilcox evaluated her for financing, and Wilcox created a financing plan for Plaintiff. Plaintiff alleged in the complaint that she gave Wilcox instructions that only two financial institutions, Americredit and Ally Financial, were allowed to access her personal credit information. (Doc. No. 1; Comp. ¶¶ 21 and 23-25). Plaintiff claimed she later reviewed her credit report and found that Wilcox had submitted her credit application to other financial institutions, including Exeter. Plaintiff

sued Exeter for violation of the FCRA for impermissibly receiving and viewing her credit report and for invasion of privacy. (*See* Compl.)

Wilcox and Exeter had a business relationship as described in the "Non-Recourse Dealer Agreement" ("Agreement"). Under the Agreement, if a customer needed financing to pay for the purchase of the vehicle, Wilcox would submit a credit application to Exeter. (Doc. No. 86; Kluz Decl.,Ex. 1). The contract is governed by Texas law. (*Id.* at ¶ 21.e). Wilcox specifically warranted:

> All Credit Applications submitted to Exeter shall be with the consent of Buyer and shall contain an authorization which complies with the Fair Credit Reporting Act and all other applicable laws that will enable Exeter to obtain a consumer report regarding the Buyer. Dealer shall notify each Buyer applicant that his/her Credit Application is being submitted to Exeter and that Exeter may obtain a consumer report regarding the Buyer.

(*Id.* at ¶ 4).

Wilcox has also warranted and represented that all of Wilcox's actions comply with the FCRA:

> Compliance with Law. All business practices, acts and operations of Dealer (including, without limitation, all forms and documents used by Dealer and the sale and financing of Vehicles and Additional Product) are in compliance with all applicable federal, state and local laws, regulations, rules and ordinances, including, but not limited to, the Used Car Rule, the Fair and Accurate Credit Transactions Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act and Regulation B, the Truth-in-Lending Act and Regulation Z, Title V of the Gramm-Leach-Bliley Act and Regulation P, the Federal Trade Commission rules and regulations and all other federal, state and local laws, regulations, rules and ordinances.

(*Id.* at ¶ 9.d).

Exeter took the position that it pulled Plaintiff's credit report because Wilcox sent Plaintiff's credit application to Exeter so that Exeter could decide whether to finance the purchase of the vehicle. Exeter ultimately declined to do so. When Plaintiff sued Exeter, Exeter tendered its defense to Wilcox, pursuant to the indemnity provision in the Agreement:

> Dealer shall defend, indemnify, and hold Exeter... harmless from and against any and all costs, expenses, outside attorney's fees, court costs and other amounts arising out of or resulting from (i) Dealer's breach of this Agreement, (ii) failure of any representation or warranty of Dealer contained in this Agreement to be accurate, (iii) Dealer's maintenance, use or disclosure of Buyer's or applicant Buyer's information, (iv) evaluation of Buyer or applicant Buyer for financing, (v) Dealer's denial of financing, or other adverse action (as such term is defined by the Fair Credit Reporting Act and/or Equal Credit Opportunity Act), relating to a Buyer or applicant Buyer, or (vi) any actions of Dealer in connection with the Credit Applications and Contracts sold by it under this Agreement.

(*Id*. at ¶ 15). Wilcox accepted the tender and provided a defense to Exeter beginning in June 2015. Ultimately, Plaintiff's claims against Exeter were dismissed.

Although Wilcox paid the attorney's fees of the firm that represented Exeter in the suit, Wilcox refused to pay additional attorney's fees in the amount of $7,145.50 that Exeter paid to its own outside counsel for work done on Exeter's defense of the claims, both before and after Wilcox accepted the defense. (*See* Doc. No. 85, Mem. of Law in Supp. of Cross-Claimant's Mot. for J. on the Pleading ("Exeter's Mem.")). Wilcox contends that it is not required to pay the fees because provisions of the Agreement do not require Wilcox to indemnify

Exeter under the Texas express-intent rule, which provides that an indemnitee like Exeter cannot obtain indemnification for its own wrongful conduct unless the indemnity agreement contains a specific provision obligating the indemnitor, *i.e.*, Wilcox, to indemnify the indemnitee against the type of wrongful conduct alleged against the indemnitee. (*See* Doc. No. 93, Mem. of Law in Supp. of Cross-Defendant's Mot. for J. on the Pleading ("Wilcox's Mem.")).

## II.     STANDARD OF REVIEW

This case is before the court on cross-motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) by co-defendants Exeter and Wilson. The same standard of review applies for a Rule 12(c) motion as applies to Rule 12(b)(6) motions. *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). A judgment on the pleadings is appropriate when there are no material issues of fact and the moving party is entitled to a judgment as a matter of law. *Franklin High Yield Tax-Free Income Fund v. Cty. of Martin, Minn.*, 152 F.3d 736, 738 (8th Cir. 1998). Under Texas law, interpretation of unambiguous contracts is a question of law for the court to decide. *Coastal Mart, Inc. v. Sw. Bell Tel. Co.*, 154 S.W.3d 839, 843 (Tex. Ct. App. 2005).

Exeter alleges Wilcox has a contractual duty to indemnify Exeter for all attorney's fees related to Plaintiff's original lawsuit. (Doc. No. 83.) Wilcox argues that the indemnity provision cannot be applied to this current case because the provision does not specifically state the type of intent the situation involves

(under the "express-intent doctrine"), and Wilcox does not have to indemnify Exeter for Exeter's own misconduct. (Doc. No. 91.)

## III. ANALYSIS

### 1. Fair Credit Reporting Act Claim and the Agreement

Exeter alleges that Plaintiff's original lawsuit triggered Wilcox's contractual duty to indemnify Exeter for all related attorney's fees stemming from the lawsuit. Under Texas law, the normal rules of contract construction apply to indemnity agreements, and unambiguous contracts are enforced as written. *Coastal Mart, Inc. v. Sw. Bell Tel. Co.,* 154 S.W.3d at 843.  Wilcox expressly warranted and represented that its actions were in compliance with all applicable federal, state, and local laws, and regulations, rules, and ordinances, including the FCRA. (Kluz Decl., Ex. 1 at ¶ 4).  In addition, Wilcox also expressly warranted and represented that all credit applications submitted to Exeter have been provided with the consent of the buyer and contain authorizations in accordance with the FCRA. (*Id.*)

The Agreement's indemnity clause also covers actions and claims, such as Plaintiff's, which specifically arise from Wilcox's breach of conduct.  Wilcox had obligations in relation to the evaluation, maintenance, use, or disclosure of a buyer or potential buyer's credit application and other buyer information used to evaluate the buyer for financing.  (*Id.* at ¶ 15).  Thus, Wilcox's obligation to indemnify Exeter for its attorney's fees and costs incurred in defending Plaintiff's

6

claims falls squarely within the Agreement. Wilcox had specifically warranted against this precise situation.

### 2. Express Indemnity Provision

Wilcox argues that Exeter cannot obtain indemnification because the indemnity agreement did not expressly set forth the intent to cover claims against Exeter for the type of wrongful conduct that Exeter allegedly engaged in when it reviewed Plaintiff's credit application and pulled her credit report.

Pursuant to the Texas express-intent doctrine, the need to state express intent is largely related to whether or not the provision deals with the indemnitee's own misconduct. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707 (Tex.1987), *and Quorum Health Resources v. Maverick County Hosp. Dist.*, 308 F.3d 451, 464 (5th Cir.2002)). The express-intent doctrine does not apply, however, when an indemnitee (Exeter) is seeking indemnity for an indemnitor's (Wilcox's) actions. *Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 889 (Tex. Ct. App. 2007).

Wilcox's reliance on *Dresser Industries, Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505 (Tex.1993) for the argument that indemnification is not required under the express-intent rule is misplaced. Fee shifting to avoid the consequences of one's own wrongdoings involves "an extraordinary shifting of risk" which implicates the fair notice requirements represented by the express intent doctrine. *Id.* at 507-09, and *Tutle & Tutle Trucking, Inc. v. EOG Res., Inc.*, 391 S.W.3d 240, 248 (Tex. Ct. App. 2012); *see also Green Int'l, Inc. v. Solis*, 951

S.W.2d 384, 387 (Tex. 1997) (discussing the risk-shifting nature of indemnification and the transfer of risk for damages in tort and negligence damages in contrast to the shifting of extraordinary risk in breach of contract cases).  Because this lawsuit arose from Plaintiff's dealings with Wilcox, Exeter is not seeking indemnification for its own conduct but rather, for Wilcox's conduct.  (*See* Doc. No. 1 (Compl.))  Claims against Exeter arose from Plaintiff's allegation that she only gave her credit application to Wilcox to be shared with two other specified financing institutions.  The Agreement between Exeter and Wilcox provides that Wilcox will indemnify for attorney's fees in situations specifically like those in the underlying FCRA lawsuit, including those arising out of "… (iv) evaluation of Buyer or applicant Buyer for financing … or (vi) any actions of Dealer in connection with the Credit Application and Contracts sold by it under this Agreement."  (Kluz Decl. Ex. 1, ¶ 15).

    Here, the claims made by Plaintiff against Exeter arose from Wilcox's alleged misconduct in violating its agreement with the Plaintiff to send her credit application to only two financial institutions.  Accordingly, due to the terms of the contract, and pursuant to the FCRA, Rule 12(c), and the Texas state law regarding express-intent indemnity provisions, the Court concludes that Wilcox should be required to indemnify Exeter for $7,145.50 in attorney's fees due under the Non-Recourse Dealer Agreement.

## **RECOMMENDATION**

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Cross-Claimant Exeter's motion for judgment on the pleadings (Doc. No. 83) should be **GRANTED**, and Wilcox should be ordered to indemnify Exeter in the amount of $7,145.50 in attorney's fees; and

2. Cross-Defendant Wilcox's motion for judgment on the pleadings (Doc. No. 91) should be **DENIED**.

Date: April 4, 2016

                                                                    *s/ Jeffrey J. Keyes*
                                                                    JEFFREY J. KEYES
                                                                    United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 18, 2016,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.